**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JOEL ANTHONY SCHAMBEAU,      :

     Plaintiff,             :

vs.                           :       CA 20-0436-TFM-MU

DANIEL SCHAMBEAU, et al.,      :

     Defendants.

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on Plaintiff's Amended Complaint (Doc. 4), the motion to dismiss filed by Jones Walker LLP and Matthew McDonald (Doc. 26; *see also* Docs. 25 & 27), the motion to dismiss filed by Stone Crosby, P.C. and Shawn Alves (Doc. 30), the motion to dismiss filed by Jerry Eugene Gibbons and Karen McKinney (Doc. 31), the motion to dismiss filed by Warren Schambeau, Daniel Schambeau, and Sue Schambeau (Doc. 32), the Plaintiff's omnibus response and objections to all pending motions to dismiss (*see* Doc. 38), and the movants' replies (*see* Docs. 39, 40 & 41). Based on the contents of these and all other relevant pleadings in this matter, the Magistrate Judge **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for want of subject-matter jurisdiction.

## PROCEDURAL BACKGROUND

Plaintiff Joel Anthony Schambeau originally filed a complaint in this Court on September 4, 2020 (*see* Doc. 1) and filed an amended complaint on September 8, 2020 (Doc. 4). The amended complaint (Doc. 4) is the operative pleading in this case. *Compare Rosa v. Florida Dep't of Corrections,* 522 Fed.Appx. 710, 714 (11th Cir. Jun. 26, 2013) ("Under the Federal Rules of Civil Procedure, 'an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.'" (quoting *Krinsk v. SunTrust Banks, Inc.,* 654 F.3d 1194, 1202 (11th Cir. 2011)) *with DeSisto College, Inc. v. Line,* 888 F.2d 755, 757-758 (11th Cir. 1989) (acknowledging as proper the denial as moot of defendant's motion to dismiss the first amended complaint because the plaintiff filed a second amended complaint), *cert. denied,* 495 U.S. 952, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990).

In his amended complaint, Schambeau invokes federal question jurisdiction[1] on the basis of the following statues and federal code section/rule: (1) 15 U.S.C. § 77q (fraudulent interstate transactions); (2) 17 C.F.R. § 240.13b2-1 (falsification of accounting records); and (3) 18 U.S.C. § 1514A (the Whistleblower Protection Act). (Doc. 4, PageID. 18). The Plaintiff does not divide his amended complaint into separate counts or delineate which counts pertain to the nine different defendants he identifies in the operative pleading, and his amended complaint contains few facts. (*See generally* Doc. 4). Instead, Schambeau sets forth a statement of his claim against all nine

---

[1]     Schambeau does not specifically invoke diversity jurisdiction (*see* Doc. 4, PageID. 18); however, he later completes that portion of the diversity jurisdiction section of his form complaint indicating that this action involves more than $75,000.00 (*see id.,* PageID. 19). As explained, *infra,* Plaintiff cannot avail himself of this Court's diversity jurisdiction.

defendants (*see id.,* PageID. 19), after which he makes very general and conclusory allegations against the nine separate defendants as a purported continuation of his claim(s) (that is, purported "identification" of the Defendants' alleged illegal acts) (*see id.,* PageID. 20-22). His Statement of Claim reads:

> Plaintiff would show that the Defendant[]s collectively entered into a civil conspiracy to deprive Plaintiff of money, stocks, and his position in two companies, causing loss of salary, stocks, ownership of property, equipment, and his reputation. Defendants have collectively caused Plaintiff tremendous financial damage, severe emotional distress and fear of physical harm, by committing illegal acts as set out herein.[2] Plaintiff

---

[2] For instance, Plaintiff alleges that Daniel Schambeau and Warren A, Schambeau, Sr. "[u]sed threats, manipulation, deceit, intimidation, and deceptive devices, in order to prevent Shareholders Statutory Right to inspect corporate books and records necessary to perform due diligence in the sale of stock." (*Id.,* PageID. 20). Plaintiff makes almost identical allegations against Karen McKinney, the external accountant for Virginia Wrecking Co., Inc. and Schambeau Rental, save that he avers that this Defendant "[u]sed manipulation, deceit, fraud and deceptive devices" rather than "threats, manipulation, deceit, intimidation, and deceptive devices[.]" (*See id.*). The same exact allegations relative to the sale of stock (as made against Karen McKinney) are made against Defendant Sue D. Schambeau (*see id.*), who Plaintiff also claims, as primary bookkeeper and Secretary Treasurer of the corporations, "engaged in a pattern of deceit, subterfuge and concealment with company records." (*Id.*) As for Defendant Jerry E. Gibbons, Plaintiff claims that this defendant "[f]iled false tax records[ and engaged in] manipulation[] and deceptive devises in order to prevent the Shareholders Statutory Right to inspect Corporate books and records necessary to perform due diligence necessary in the sale of stock." (*Id.*).

With respect to the attorneys and law firms named as defendants, Schambeau avers that Jones Walker "[a]llowed Matt McDonald to break his consent and agreement contract dated 7-13-2011[]" (*id.*) and that Stone Crosby allowed Shawn Alves to breach certain rules of professional conduct in a civil case (CA 2011-901722), 15 U.S.C. § 78j, and SEC Rule 13b2-2 (*id.* at PageID. 21). Plaintiff claims that McDonald "knowingly and recklessly provided substantial assistance to Shawn Alves and Daniel Schambeau in violation of a provision of 15 U.S.C. § 78j" (specifically, manipulative and deceptive devices); he breached certain identified rules of professional conduct; he violated 15 U.S.C. § 78j; he violated the Alabama Securities Act, §§ 18-6-17 and 18-6-18; and he aided and abetted in violation of the SEC Act of 1934, 15 U.S.C. § 78t(e). (*Id.*) As for Shawn Alves, Schambeau claims that Alves breached certain identified rules of professional conduct in the aforementioned civil case, which Plaintiff discovered on September 17, 2017; he violated 15 U.S.C. § 78j; and he violated SEC Rule 13b2-2. (*Id.* at PageID. 22).

The only factual background provided by Plaintiff is that in a contract dated July 13, 2011, Matt McDonald, Plaintiff and Daniel Schambeau agreed that McDonald would represent Virginia Wrecking Company's interests; that a document dated September 11, 2012, reflects (Continued)

takes the position as a Whistleblower pursuant to Section 806 of the
Sarbanes-Oxley Act of 2002 ("SOX"), codified at 18 U.S.C. § 1514A,
[which] prohibits retaliation against employees of public companies who
report suspected violations of Securities and Exchange Commission rules
or federal laws relating to fraud.

(*Id.,* PageID. 19 (footnote added)). Plaintiff appears to suggest that this civil conspiracy

dates back to 2011 or 2012. (*See id.*).

Combining what little facts can be gleaned from Plaintiff's Amended Complaint

with actual copies of some of the documents Plaintiff references and relevant

documents from *Schambeau v. Schambeau,* CV-2011-901722 (Baldwin County Circuit

Court) (*compare* Doc. 4, PageID. 20-21 *with* Doc. 25-1-25-3 &  Doc. 30-1-30-9), it is

apparent, as Defendants aver, that this action arises out of the litigation in the Baldwin

County Circuit Court, which resolved almost eight years ago on December 20-21, 2012

(*compare* Doc. 30-7 (December 20, 2012 joint motion for dismissal with prejudice of CV-

2011-901722); Doc. 30-8 (General Mutual Release in CV-2011-901722 executed on

December 20, 2012) & Doc. 25-2 (Stock Purchase Agreement executed on December

20, 2012) *with* Doc. 31-1, PageID. 265 (December 21, 2012 Order of Dismissal entered

in CV-2011-901722)).[3] In the state court action, Joel A. Schambeau (the Plaintiff herein)

---

that Shawn Alves was the attorney for Daniel Schambeau in a state court civil action, CV-2011-
901722; and that a letter received September 17, 2017, signed by Matt McDonald, reveals that
Shawn Alves had assumed the duties of corporate attorney during the litigation of the state
court action. (*See id.* at PageID. 20-21). Although this Court is now in possession of the July 13,
2011 letter penned by Matt McDonald and it is clear Shawn Alves was at all times the attorney
for Daniel Schambeau in the state court litigation filed in 2011 and concluded in 2012, a copy of
the September 17, 2017 letter purportedly signed by Matt McDonald has not been supplied to
this Court.

[3]     Indeed, Plaintiff himself backhandedly admits that the instant case arises from
the previous state court proceeding. (*See* Doc. 38, PageID. 311 ("Plaintiff would show that the
Defendant[]s have submitted as exhibits documents that support Plaintiff[']s claims. Said
documents are from an earlier state case that was to have resolved many of Plaintiff's claims,
however, said issues and claims have not been resolved.")).

4

sued Daniel Schambeau (one of the Defendants named herein), Virginia Wrecking

Company, Inc., and Schambeau's Rental Co., Inc., in the Circuit Court of Baldwin

County, Alabama on November 7, 2011, seeking to liquidate the two Alabama for-profit

corporations[4] and for injunctive relief. (*See* Doc. 30-1, PageID. 140-45 (plaintiff

generally averred that he and his brother, Daniel, were the principal shareholders,

directors and officers of Virginia Wrecking Co., Inc. and Schambeau's Rental Co., Inc.;

that the directors of the two corporations were deadlocked over the management of

their corporate affairs; and that Daniel had taken control of the funds and assets of the

two corporations to the exclusion of the Plaintiff, failing to account for corporate monies

received, corporate monies paid, and corporate assets transferred)).[5] Joel A.

---

[4]     Neither of these companies is registered with the Securities and Exchange
Commission ("SEC"). *See* https://www.sec.gov/edgar/searchedgar/companysearch.html (last
visited, January 5, 2021).

[5]     Even before the lawsuit was filed, Matt McDonald of Jones Walker penned a
letter to Joel A. Schambeau and Daniel Schambeau on July 13, 2011, which both of these
gentlemen actually executed, regarding that firm's representation of Virginia Wrecking
Company, Inc. (Doc. 25-1).

>      This letter confirms what we have discussed about the relationship
> between the two of you and our client, Virginia Wrecking Company, Inc. ("VWC"),
> and Jones Walker's continued representation of VWC concerning the potential
> sale of its stock either to an existing shareholder or to a third-party.

>      As we discussed, our only client in this matter will be VWC. We anticipate
> that our firm will be preparing most of the documents necessary to effectuate the
> various aspects of the sale of the stock of VWC and, potentially, the affiliated
> company, Schambeau Rental, L.L.C. We will, of course, provide you (either
> directly or, if you should decide to retain counsel, through that counsel) with draft
> copies of those documents to allow you to comment on their terms, suggest
> changes, and generally protect your interests as shareholders. In preparing
> documents, or doing other work, however, we will be representing only VWC and
> its interests. If either of you wishes to have individual legal representation in this
> matter, you should retain another lawyer or law firm, as Joel has done by
> retaining Michael Delaney.

(Continued)

5

Schambeau filed an Amended Complaint on October 1, 2012, therein retaining his claims to liquidate Virginia Wrecking Co., Inc. and Schambeau's Rental Cop., Inc., adding a claim for breach of fiduciary duty against Daniel Schambeau, and eliminating the claims for injunctive relief. (*See* Doc. 30-2, PageID. 148-152).

Ten days after the filing of the amended complaint, that is, on October 11, 2012, the parties appeared to have resolved the action through mediation. (*See* Doc. 30-4, PageID. 164-66 (handwritten settlement memorandum to which was attached a list of equipment and inventory to be provided to Joel Schambeau)). However, Joel Schambeau then retained new counsel, Tom McAlpine, who advised Daniel Schambeau's attorney, Shawn Alves, by email dated October 23, 2012, that a number of issues had arisen preventing Joel Schambeau from "follow[ing] through with the settlement terms." (Doc. 30-4, PageID. 167; *see also id.* ("As this case is set for trial immediately, I would suggest that we be allowed to complete the Court ordered examinations of the books and records of the company and depose Daniel, his wife, Susie, and their father with regard to the manner in which Daniel has operated this company over the years.")). This email prompted the October 25, 2012 filing by Daniel Schambeau of a motion to enforce settlement (that is, the mediated agreement dated October 11, 2012) and award sanctions. (Doc. 30-4, PageID. 161-63). That motion was

---

We know that you both have a good relationship with each other. However, situations could arise where your interests differ. In any such circumstances, we will be representing only VWC's interests. You have acknowledged that you understand that to be the case and agree to our moving forward solely as VWC's counsel.

We look forward to working with you on this project.

(*Id.*).

set down for a hearing on November 28, 2012 (*compare* Doc. 30-5, PageID. 180 *with* Doc. 30-9, PageID. 204), during which the parties agreed to "consent to the October 11, 2012, settlement memorandum" (Doc. 30-5, PageID. 180) with certain revisions, along with other matters, that were specifically set out during the hearing (*see id.,* PageID. 180-82 (changing mortgage to secure the promissory note to Joel Schambeau from the Duck Hill property to a promissory note from Schambeau Development II, L.L.C. for property on County Road 64; the Defendants agree to replace an oil cooler on a Kobelco 400 and repair a cylinder on the Komatsu 300; the Defendants agree to allow Joel Schambeau to retain equipment inventory on the Stapleton property for up to a year; and by December 14, 2012,[6] the parties would meet so that Joel Schambeau could divest all his ownership interests in Schambeau Rental Company and Virginia Wrecking Company and transfer those ownership interests to the Defendants, in exchange for $250,000 and a promissory note for $550,000 secured by the mortgage on the County Road 64 property)). Joel Schambeau, as did his brother Daniel, verified during this hearing that the agreement described by the attorneys during the course of the hearing was his agreement. (*See* Doc. 30-5*,* PageID. 183).

On December 5, 2012, Daniel Schambeau moved for entry of a Consent Order memorializing the final settlement. (*See id.*, PageID. 176-77). The following Consent Order was entered by Baldwin County Circuit Judge James H. Reid, Jr., on December 10, 2012:

> This matter having come [on] for [a] hearing on Defendant Daniel A. Schambeau's Motion to Enforce Settlement Agreement and after the Court having heard testimony the parties agree in open Court to settle and

---

[6]     This date was later changed to December 20, 2012. (*Compare* Doc. 25-2 *with* Doc. 30-8).

resolve all claims by and between the parties. Thereupon, Coun[se]l for the parties read the Settlement Agreement in[to] the Record of the Court and the parties ratified [it]. A copy of the Reporter's Official Transcript is attached to this Order.

It is hereby Ordered, Adjudged and Decreed that the parties have resolved, settled and compromised all claims between them; the above-styled action has been fully settled and compromised upon the terms dictated into the record, these terms are adopted as the Order of the Court and the parties have thirty (30) days to implement the Settlement and to present the Court with a Motion to Dismiss with Prejudice.

(Doc. 30-6, PageID. 187). On December 20, 2012, a joint motion for dismissal with prejudice was filed (Doc. 30-7, PageID. 189)[7] and, on December 21, 2012, the Baldwin County Circuit Court granted the parties' motion (*id.* at PageID. 191).

---

[7]    That same day, the parties executed a General Mutual Release which states in relevant measure as follows:

3.    The Settling Parties in consideration of the terms and conditions of the October 11, 2012 Settlement Memorandum as revised in open court on November 28, 2012 and other good and valuable consideration, the receipt, adequacy and sufficiency of which are acknowledged and confirmed by the Settling Parties, completely release, waive, and discharge each other and each other's trustees, heirs, executors, predecessors in interest, successors, assigns, past, present and future officers, directors, shareholders, partners, members, employees, agents, servants, representatives, subsidiaries, parent corporations, affiliates and their attorneys in-fact or in law from any and all claims, actions, causes of action, demands, rights, damages, costs, expenses, compensations and obligations of any kind which the Settling Parties had, now have or which may hereafter accrue on account of any known or unknown, foreseen or unforeseen injury, act, error, omission, fact, circumstance, situation, matter, cause or failure to act regarding or in any way or relating to in any way Virginia Wrecking Company, Inc. or Schambeau's Rental Co., Inc., and occurring or alleged to have occurred at any time up to the date this General Mutual Release is executed.

.    .    .

10.    Further that Schambeau Rental Co., Inc. Virginia Wrecking Company, Inc., and Daniel A. Schambeau do hereby jointly and severally agree to [] indemnify and hold harmless Joel Schambeau, his heirs and assigns, from all past, present and future claims and/or potential claims, demands, liabilities, causes of actions and/or lawsuits, relating in any way to the operations of Virginia Wrecking Company, Inc., or Schambeau Rental Co., Inc., including but
(Continued)

The undersigned considers the Defendants' motions to dismiss against this procedural backdrop.

## CONCLUSIONS OF LAW

**A.    Pleading Standard.** The sufficiency of Plaintiff's claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly*.").

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct.

---

not limited to those involving personal injury, property damages, promissory notes, bonds, and other contractual and/or tax liabilities of the companies.

(Doc. 30-8, PageID. 194 & 195). On December 20, 2012, Joel Schambeau, Daniel Schambeau, and Daniel Schambeau, as authorized agent of Virginia Wrecking Company, Inc., entered into and executed a Stock Purchase Agreement, the terms of which essentially provided for Joel Schambeau's transfer of his 354 shares of stock in Virginia Wrecking (as well as his resignation from the company, effective December 15, 2012, and his relinquishment of all positions held in the corporation and the Board of Directors) in exchange for "$800,000.00 ($250,000.00 to be paid at closing, the balance of $550,000.00 to be paid pursuant to a Promissory Note payable over sixty (60) months)." (Doc. 25-2, PageID. 92).

at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P. 8(a) "something beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted; citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* 568 U.S. 1088, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id.* at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making

relief under the governing law plausible, not merely speculative." *ABB Turbo Systems AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery imposes several costs on the litigant from whom discovery is sought[]" and "discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id*. at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly/Iqbal* pleading standard into a functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement

to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."), *cert. denied,* ___ U.S. ___, 137 S.Ct. 2292, 198 L.Ed.2d 724 (2017); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

In addition to the pled averments relevant to these Plaintiffs' claims, documents which are referenced in, or central to, the claims presented are incorporated as exhibits to the complaint, and may be considered without converting a Fed.R.Civ.P. 12(b) motion to dismiss into a Fed.R.Civ.P. 56 motion for summary judgment. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Therefore, in ruling on a motion to dismiss, courts consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice."); *see Halmos v. Bomardier Aerospace Corp.,* 404 Fed.Appx. 376, 377 (11th Cir. Dec. 7, 2010) (unpublished per curiam opinion) ("[A] district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion.").[8] "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) (citations omitted), *cert. denied,* 553 U.S. 1004, 128 S.Ct. 2055, 170 L.Ed.2d 794 (2008).

### B. Federal Rules of Civil Procedure 8 and 10 and Shotgun Pleadings.

While courts in the Eleventh Circuit generally afford the pleadings of *pro se* litigants liberal construction, those pleadings must still "'conform to procedural rules.'" *Muhammad v. Muhammad,* 654 Fed.Appx. 455, 456 (11th Cir. June 27, 2016) (quoting *Albra v. Advan., Inc.,* 490 F.3d 826, 829 (11th Cir. 2007)), *cert. denied,* ___ U.S. ___, 137 S.Ct. 1206, 197 L.Ed.2d 247 (2017).

> Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[9] Though there is no required technical form, "[e]ach allegation must be simple, concise, and direct." *Id.* at 8(d)(1). The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quotation omitted) (ellipses in original). Additionally, each separate claim should be presented in a separate number paragraph, with each paragraph "limited as far as practicable to a single set of circumstances." Fed.R.Civ.P. 10(b).

*Id.* at 456-57 (footnote added).

---

[8] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[9] Rule 8(a)(1) provides that a pleading must also contain "a short and plain statement of the grounds for the court's jurisdiction[.]" Fed.R.Civ.P. 8(a)(1).

"A complaint that fails to follow Rules 8 and 10 may be classified as a shotgun pleading." *Id.* at 457. In particular, "[s]hotgun pleadings violate Rule 8(a)(2)'s 'short and plain statement' requirement by 'failing . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *McDonough v. City of Homestead,* 771 Fed.Appx. 952, 955 (11th Cir. May 7, 2019), quoting *Vibe Macro, Inc. v. Shabanets,* 878 F.3d 1291, 1294-95 (11th Cir. 2018) (other citation omitted). Stated somewhat differently, a shotgun pleading is defined by "[t]he failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading[.]" *Beckwith v. Bellsouth Telecommunications Inc.,* 146 Fed.Appx. 368, 371 (11th Cir. Aug. 22, 2005), citing *Byrne v. Nezhat,* 261 F.3d 1075, 1129-30 (11th Cir. 2001).

In describing the nature of a shotgun pleading, the Eleventh Circuit has observed that "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir. 2002). Such pleadings typically are characterized by either factually unsupported claims or an inability to discern which allegations of fact are intended to support which claims and frequently fail to specify which defendant is responsible for each act alleged. *Beckwith, supra,* 146 Fed.Appx. at 372; *cf. McDonough, supra,* 771 Fed.Appx. at 955 ("Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of

action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act."). As a result, a district court "'whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials.'" *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 806 n.4 (11th Cir. 2010), quoting *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998). And, consequently, the Eleventh Circuit has instructed district courts to prohibit shotgun pleadings as fatally defective. *See, e.g., B.L.E. ex rel. Jefferson v. Georgia,* 335 Fed.Appx. 962, 963 (11th Cir. Oct. 23, 2009) (citations omitted). To allow such a pleading would place an unjustifiable burden on the Court to take on the virtually impossible task of "ascertain[ing] what factual allegations correspond with each claim and which claim is directed at which defendant." *Beckwith, supra,* 146 Fed.Appx. at 372.

1. **Analysis.** Joel Schambeau's amended complaint (Doc. 4) is a quintessential shotgun pleading of at least the second and third types described in *McDonough, supra,* 771 Fed.Appx. at 955, because it is rife with conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action, *see id., and* because he has failed to separate each cause of action or claim for relief into distinct counts (*see* Doc. 4), thereby running afoul of Rule 10(b), *compare id.* ("A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]") *with Muhammad, supra,* 654 Fed. Appx. at 457 ("[E]ach separate claim should be presented in a separate number paragraph, with each paragraph 'limited as far as practicable to a

single set of circumstances.' Fed.R.Civ.P. 10(b).”). In short, because Joel Schambeau's shotgun pleading does not comport with the standards of Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, regardless of his conclusory arguments to the contrary (*see generally* Doc. 38), it is impossible to find that Plaintiff has stated any claim against the Defendants.[10] While the undersigned would normally recommend not only that Schambeau's Amended Complaint be stricken and dismissed for failure to comply with the pleading requirements of the Federal Rules of Civil Procedure but also that Schambeau be given one chance to amend his complaint to cure all pleading deficiencies and bring any viable claim he may have against one or more of the Defendants, *see LaCroix v. Western District of Kentucky,* 627 Fed.Appx. 816, 819 n.1 (11th Cir. Sept. 28, 2015), *cert. dismissed,* ___ U.S. ___, 136 S.Ct. 996, 194 L.Ed.2d 2 (2016), the undersigned **DECLINES** to chart this course because this Court clearly cannot exercise federal question jurisdiction over this matter.

        C.     <u>**Rule 12(b)(1) and Amended Complaints**</u>. A motion to dismiss filed under Rule 12(b)(1) “may be based upon either a facial or factual challenge to the complaint.” *Williamson v. Secretary of Veteran Affairs,* 139 F.Supp.3d 1282, 1285 (N.D. Ala. 2015), citing *McElmurray v. Consolidated Gov't of Augusta-Richmond Cty.,* 501 F.3d 1244 (11th Cir. 2007).

> “Facial attacks” on the complaint “require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.” *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d

---

[10]     Even when the undersigned considers the additional facts supplied by the Defendants from the underlying state court action, the Court finds itself unable to discern the factual basis for any claim.

884, 891 (3d Cir. 1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.*

*Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). The Defendants' Rule 12(b)(1) attacks in this case are facial attacks on Plaintiff's Amended Complaint. (*Compare* Doc. 30, PageID. 130 *with* Doc. 31, PageID. 211 (noting that Plaintiff's amended complaint alleges jurisdiction in this Court "solely on the basis of federal question jurisdiction.")). And it must be noted at this juncture that in a case initially filed in federal court, as here, the Court "must look to [the] amended complaint to determine whether [it has] subject-matter jurisdiction." *Pintando v. Miami-Dade Housing Agency,* 501 F.3d 1241, 1243 (11th Cir. 2007); *see Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 473-74, 127 S.Ct. 1397, 1409, 167 L.Ed.2d 190 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.").

### D.   <u>Subject-Matter Jurisdiction in General</u>.

Federal district courts are "courts of limited jurisdiction" that are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution." *University of South Alabama v. American Tobacco Co., supra*, 168 F.3d at 409 (citation and quotations omitted); *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction,

and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted). And, indeed, even though it is clear that "[p]leadings filed by *pro se* litigants are given liberal construction," these litigants are "'required [] to conform to procedural rules[,]'" *Cornelius v. U.S. Bank Nat'l Ass'n,* 452 Fed.Appx. 863, 865 (11th Cir. Nov. 29, 2011), quoting *Moton v. Cowart,* 631 F.3d 1337, 1341 n.2 (11th Cir. 2011), and, as a consequence, "must 'affirmatively allege facts demonstrating the existence of jurisdiction.'" *Id.*, quoting *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir. 1994) (other citation omitted); *see also Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,* 411 F.3d 1242, 1247 (11th Cir. 2005) ("The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim.").

There are three different types of subject matter jurisdiction a federal district court may exercise: "(1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.,* 128 F.3d 1466, 1469 (11th Cir. 1997), *cert. denied,* 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998). "[F]ederal courts always have an obligation to examine *sua sponte* their jurisdiction before reaching the merits of any claim." *Kelly v. Harris,* 331 F.3d 817, 819 (11th Cir. 2003).

Here, Plaintiff specifically invokes federal question jurisdiction, in accordance with 28 U.S.C. § 1331, in his amended complaint (Doc. 4, PageID. 18) and appears to implicitly invoke diversity jurisdiction (*see id.,* PageID. 19 ("The amount in controversy—

the amount the plaintiff claims the defendant[s] owe[] or the amount at stake—is more

than $75,000, not counting interest and costs of court[.]")).[11]

1.  **Federal Question Jurisdiction**.

Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction

of all civil actions arising under the Constitution, laws, or treaties of the United States."

*Id.* While § 1331 is a jurisdictional statute "it does not supply an independent basis for

subject matter jurisdiction absent a federal question; that is, it merely establishes a

district court's jurisdiction over claims arising under federal statutes, treaties, or the

Constitution." *Hawthorne v. McCarthy,* 2020 WL 836840, *6 (N.D. Ala. Feb. 20, 2020)

(citations omitted), *reconsideration denied,* 2020 WL 930326 (N.D. Ala. Feb. 26, 2020).

"Whether a claim arises under federal law for purposes of 28 U.S.C. § 1331 is generally

---

[11]     Plaintiff does not cite or rely upon a specific statutory grant of jurisdiction; therefore, the undersigned will not address this type of federal subject matter jurisdiction.

In addition, the undersigned only parenthetically addresses Plaintiff's implicit invocation of diversity jurisdiction, because Plaintiff simply has not alleged facts demonstrating the existence of federal diversity jurisdiction. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,* 411 F.3d 1242, 1247 (11th Cir. 2005) ("The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim."). To be sure, Plaintiff alleges that the amount in controversy exceeds $75,000, exclusive of interest and costs (*see* Doc. 4, PageID. 19); however, his amended complaint contains no specific factual allegations regarding the resident citizenship of the named defendants (*see id.,* PageID. 18-19), though it is clear from elsewhere in his complaint that most of the Defendants, like Plaintiff himself, are citizens of Alabama (*see id.,* PageID. 14-17 (reflecting Alabama addresses for Plaintiff and all Defendants, save for Jerry Gibbons, whose address is listed as Ponte Vedra Beach—St. Johns, Florida)). Because it is imminently clear that Plaintiff is a citizen of Alabama and that, at the very least, all of Plaintiff's family members named as Defendants (that is, Warren A. Schambeau, Sr., Daniel Schambeau, and Sue G. Schambeau) are resident citizens of Alabama, this Court cannot exercise diversity jurisdiction. *Compare Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.") *with Cornelius v. U.S. Bank Nat'l Ass'n,* 452 Fed.Appx. 863, 865 (11th Cir. Nov. 29, 2011) ("Jurisdiction under 28 U.S.C. § 1332 based on the parties' diversity of citizenship 'requires complete diversity—every plaintiff must be diverse from every defendant.'"); *see Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). In other words, because Plaintiff and most of the Defendants are citizens of the state of Alabama, diversity jurisdiction is destroyed.

determined by the well-pleaded complaint rule, 'which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Smith v. GTE Corp.*, 236 F.3d 1292, 1310 (11th Cir. 2001), quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987).

"A well-pleaded complaint presents a federal question where it 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Smith*, 236 F.3d at 1292, quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. For S. Cal.*, 463 U.S. 1, 27-28, 103 S. Ct. 2840, 2856, 77 L. Ed. 2d 420 (1983); *see also Cornelius, supra,* 452 Fed.Appx. at 865 (recognizing that under § 1331, "a federal court will have jurisdiction only when the plaintiff's cause of action is conferred by federal law or when there is some 'contested[, substantial] federal issue' and the exercise of jurisdiction is 'consistent with congressional judgment about the sound division of labor between state and federal courts . . . .' *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 313, 125 S.Ct. 2363, 162 l.Ed.2d 257 (2005).")). However, "[e]ven a claim that arises under the Constitution, laws, or treaties of the United States may be dismissed for lack of subject-matter jurisdiction if (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction,' or (2) 'such a claim is wholly insubstantial and frivolous.'" *Butler v. Morgan,* 562 Fed.Appx. 832, 834 (11th Cir. Apr. 3, 2014), quoting *Blue Cross & Blue Shield of Alabama v. Sanders,* 138 F.3d 1347, 1352 (11th Cir. 1998). "A claim is 'wholly insubstantial and frivolous' so as to warrant dismissal for lack of subject matter

jurisdiction only 'if the claim has no plausible foundation, or if the court concludes that a prior Supreme Court decision clearly forecloses the claim.'" *Id.,* quoting *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d at 1352.

The provision for federal-question jurisdiction set forth in § 1331 "is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.,* claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 312, 125 S.Ct. 2363, 2366 (2005). Here, in the jurisdictional section of his form amended complaint, Joel Schambeau avers that this Court may exercise federal question jurisdiction in accordance with 15 U.S.C. § 77q, 17 C.F.R. § 240.13b2-1, and 18 U.S.C. § 1514A. (Doc. 4, PageID. 18).[12]

_____

[12]    Later in his complaint, Schambeau alleges in a conclusory manner that Attorneys Matt McDonald and Shawn Alves violated 15 U.S.C. § 78j and 15 U.S.C. § 78t(e) (*see* Doc. 4, PageID. 21-22) but nowhere specifically indicates that these sections of the United States Code supply this Court with federal question jurisdiction. Moreover, in his omnibus response to the Defendants' motions to dismiss, Plaintiff merely cites to 15 U.S.C. § 77q, 17 C.F.R. § 240.13b2-2 (as opposed to § 240.13b2-1, which is prominently cited in his amended complaint), and 18 U.S.C. § 1514A (*see* Doc. 38, PageID. 313-323), thereby establishing to the undersigned's satisfaction that Schambeau meant to invoke federal question jurisdiction under 15 U.S.C. § 77q, 17 C.F.R. § 240.13b2-1 (and, perhaps, § 240.13b2-2), and 18 U.S.C. § 1514A. Nevertheless, assuming Schambeau meant to invoke federal question jurisdiction under 15 U.S.C. §§ 78j and 78t(e), any such attempt fails because he has not and cannot state a claim under either of these federal statutes.

To be sure, the Supreme Court has determined that though the text of the Securities Exchange Act of 1934 "does not provide for a private cause of action for § 10(b) violations," *see* 15 U.S.C. § 78j(b) (making it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."), a right of action is "implied in the words of the statute and its implementing regulation [that is, SEC Rule 10b-5, 17 C.F.R. § 240.10b-5]." *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148, 157, 128 S.Ct. 761, 768, 169 L.Ed.2d 627 (2008). "In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.,* citing *Dura* (Continued)

Unfortunately for Plaintiff, 15 U.S.C. § 77q does not supply a basis for this Court's exercise of federal question jurisdiction because that statue does not imply a private right of action. *Currie v. Cayman Resources Corp.,* 835 F.2d 780, 784-85 (11th Cir. 1988) ("We [] hold that section 17(a) does not imply a private right of action and that the district court correctly dismissed this theory of relief."); *see also Peraza v. Univa Sports, LLC,* 2015 WL 11233130, *3 (S.D. Fla. Feb. 20, 2015) (dismissing count alleging a violation of § 77q with prejudice based on the holding in *Currie*). Stated somewhat differently, where, as here, the underlying statute "does not create a private right of action for the plaintiff's claim[,]" this Court lacks jurisdiction to hear the claim. *Hawthorne, supra,* at *6; *see also Local Division 732, Amalgamated Transit Union v. Metropolitan Atlanta Rapid Transit Authority,* 667 F.2d 1327, 1335 (11th Cir. 1982) (recognizing that where there exists no private right of action under a federal statute, there exists no federal jurisdiction).

---

*Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341-42, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005); *see also Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1236-37 (11th Cir. 2008) (same). The principal problem in this case is Schambeau's inability to establish that he comes within the scope of § 10(b), as he nowhere alleges (and the facts which underlie his state-court action and the settlement of that action do not show) that in 2012 when he sold his stock in Virginia Wrecking that there was "the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange[.]" 15 U.S.C. § 78j(b). Rather, the facts simply reveal the sale/transfer of stock in a privately held Alabama for-profit corporations as part and parcel of a settlement agreement entered into in Alabama by Alabama residents. Moreover, Plaintiff has not pled any of the six elements needed for establishing a violation of this statutory provision. Therefore, 15 U.S.C. § 78j does not provide a vehicle through which this Court can exercise subject-matter jurisdiction.

As for 15 U.S.C. § 78t(e), the Supreme Court has specifically determined that the "§ 10(b) implied private right of action does not extend to aiders and abettors[,]" *Stoneridge, supra,* 552 U.S. at 158, 128 S.Ct. at 769; *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994) ("[W]e hold that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)."); instead, "in § 104 of the Private Securities Litigation Reform Act of 1995 . . . [Congress] directed prosecution of aiders and abettors [to] the SEC." *Stoneridge,* 552 U.S. at 158, 128 S.Ct. at 769, citing 15 U.S.C. § 78t(e). Accordingly, 15 U.S.C. § 78t(e) does not provide a basis upon which this Court can exercise federal question jurisdiction because Schambeau, a private plaintiff, cannot maintain an aiding and abetting action under § 10(b).

However, even if such a private right of action existed, it is clear that only *purchasers* of securities have standing to sue under 15 U.S.C. § 77q, *see* 15 U.S.C. § 77q(a)(1) ("It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce of by use of the mails, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud[.]"), and since Plaintiff was not a purchaser of securities, he cannot state a claim under § 77q. *See Kennedy v. Trustmark Nat'l Bank,* 2006 WL 140707, *2 (N.D. Fla. Jan. 17, 2006). And, finally, if such a private right of action existed, Plaintiff's complaint need contain facts establishing fraudulent *interstate* securities transactions and since his complaint does not contain facts showing interstate securities transactions, and the underlying state proceeding reveals only an intrastate private transfer/sale of stock in a for-profit Alabama corporation as part of the settlement of that underlying action,[13] Plaintiff cannot rely on 15 U.S.C. § 77q in an attempt to "lay" federal question jurisdiction in this Court.[14]

Turning to Plaintiff's reliance on Rule 13b2-1, the relevant section of the Code of Federal Regulations simply provides that "[n]o person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act." 17 C.F.R. § 240.13b2-1. Section 13(b)(2)(A) of the Securities

---

[13]      As such, this private transaction occurring solely within the state of Alabama was not subject to SEC jurisdiction. *See King v. Winkler,* 673 F.2d 342, 346 (11th Cir. 1982) (recognizing that where private stock sale is merely a means of transferring ownership in a business, the sale is not a security transaction subject to the Federal Securities Act of 1933 or the Securities Exchange Act of 1934).

[14]      Plaintiff's omnibus response in opposition offers no assistance to the Court as to exercising jurisdiction under 15 U.S.C. § 77q as he merely sets forth the provisions of the statute (*see* Doc. 38, PageID. 313-15) but offers no jurisdictional analysis.

Exchange Act requires companies to "make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer." 15 U.S.C. § 78m(b)(2)(A). Courts have made clear that the provisions of Rule 13b2-1[15] "essentially require **publicly held** corporations to keep accurate records and accounts[,]" *United States v. Wilson,* 2001 WL 798018, *6 (S.D. N.Y. July 13, 2001) (emphasis supplied), and to prevail on such a claim "the SEC must establish that [the defendant] directly or indirectly, falsified or caused to be falsified, any book, record or account that the company was required to maintain under the Securities Exchange Act." *U.S. S.E.C. v. Lowy,* 396 F.Supp.2d 225, 240 (E.D.N.Y. 2003). Moreover, some courts have found that Section 13(b)(2) and Rules 13b2-1 and 13b2-2 do not create a private right of action. *Compare Shields ex rel. Sundstrand Corp. v. Erickson,* 710 F.Supp. 686, 688 (N.D. Ill. 1989) *with Eisenberger v. Spectex Industries, Inc.,* 644 F.Supp. 48, 50-51 (E.D.N.Y. 1986).

This Court should follow those cases and also find that Section 13(b)(2) of the Securities Exchange Act of 1934 and the accompanying SEC Rules 13b2-1 and 13b2-2 do not create a private action and, therefore, provides no basis for this Court to exercise

---

[15] Plaintiff's later reference to SEC Rule 13b2-2 (Doc. 4, PageID. 21 & 22), *see* 17 C.F.R. § 240.13b2-2(a)(1) ("No director or officer of an issuer shall, directly or indirectly . . . [m]ake or cause to be made a materially false or misleading statement to an accountant in connection with . . . "[a]ny audit, review or examination of the financial statements of the issuer required to be made . . . or [] [t]he preparation or filing of any document or report required to be filed with the Commission . . . ."), and wholesale reliance on § 240.13b2-2 in his omnibus response in opposition (Doc. 38, PageID. 315-18 (merely setting forth the provisions of § 240.13b2-2)), offers him no help because there arguably exists no private right of action in this regard, as set forth *infra*. Moreover, Plaintiff again has failed to establish, much less aver, that Virginia Wrecking and Schambeau's Rental are publicly held companies which are registered with the SEC and required to file information/materials with the SEC. And, finally, even if the companies were publicly traded, the allegations under Rule 13b2-2 pertain only to Matt McDonald and Shawn Alves, neither of whom was an officer or director of "an issuer" and, therefore, this rule and accompanying statute have no application.

subject-matter jurisdiction, particularly in light of the fact that all reported cases in this Circuit under § 13(b)(2) and SEC Rules 13b2-1 and 13b2-2 involve enforcement actions by the Securities and Exchange Commission, *see, e.g., S.E.C. v. Monterosso,* 756 F.3d 1326, 1332 (11th Cir. 2014) (SEC enforcement action alleging aiding and abetting violations of § 13(b)(2)(A) of the Securities Exchange Act of 1934 and violations of Rules 13b2-1 and 13b2-2). Besides, Plaintiff has not alleged any facts establishing that Virginia Wrecking Company, Inc. and Schambeau's Rental Co., Inc. are publicly held corporations, which have issued publicly-traded securities, *see Wilson, supra,* and which are required to maintain books, records and accounts under the Securities Exchange Act, *Lowry, supra,* In addition, even if Section 13(b)(2) and Rule 13b2-1 are applicable, Schambeau has still failed to sufficiently allege a violation of § 13(b)(2)(A) and Rule 13b2-1 because he does not allow how any of the Defendants' material misrepresentations and omissions (misrepresentations and omissions which Plaintiff nowhere specifically outlines/alleges, including the dates they were made and what was actually said) affected any books, records or accounts. *See S.E.C. v. Dauplaise,* 2006 WL 449175, *8 (M.D. Fla. Feb. 22, 2006) (finding the SEC had failed to provide sufficient allegations to state a claim for violation of Rule 13b2-1 where that SEC alleged the defendant director of a corporation made material misrepresentations and omissions but did not allege how the defendant's actions affected the corporation's books, accounts or records). In short, Plaintiff's claim has no plausible foundation and appears to have been made solely for the purpose of obtaining jurisdiction; therefore, it should be dismissed for lack of subject-matter jurisdiction.

Finally, Joel Schambeau specifically invokes 18 U.S.C. § 1514A (the "Sarbanes-Oxley Act" or "SOX") as a basis for federal question jurisdiction pursuant to 28 U.S.C. § 1331. "Section 806 of the Sarbanes-Oxley Act makes it unlawful for a publicly traded company to 'discharge, demote, suspend, threaten, harass, or in any other manner discriminate against any employee' because the employee engaged in activity protected by the Act." *Sturdivant v. Chemical Waste Management, Inc.,* 2020 WL 1083212, *3 (N.D. Ala. Mar. 5, 2020), quoting 18 U.S.C. § 1514A(a)(1). However, "[b]efore an employee can assert a cause of action in federal court under Section 806 of SOX, that employee must first file a written complaint with OSHA and allow OSHA to resolve the employee's claims administratively." *Wingo v. The Southern Co.,* 2018 WL 2416447, *4 (N.D. Ala. May 29, 2018); *see also Lawson v. FMR LLC,* 571 U.S. 429, 436, 134 S.Ct. 1158, 1163, 188 L.Ed.2d 158 (2014) ("Congress has assigned whistleblower protection largely to the Department of Labor (DOL), which administers some 20 United States Code incorporated whistleblower protection provisions. The Secretary has delegated investigatory and initial adjudicatory responsibility over claims under a number of these provisions, including § 1514A, to DOL's Occupational Safety and Health Administration (OSHA)." (internal citation omitted)); *Johnson v. Stein Mart, Inc.,* 440 Fed.Appx. 795, 799 n.3 (11th Cir. Sept. 9, 2011) ("Pursuant to 18 U.S.C. § 1514A(b), a person who alleges retaliatory discharge under SOX must first file a complaint with the Secretary of Labor. The Secretary of Labor has delegated to OSHA authority to administer such complaints."). And, finally, to prevail on a whistleblower claim under SOX, a Plaintiff must allege that: (1) he engaged in

protected activity;[16] (2) the Defendant company knew or suspected that he engaged in the protected activity; (3) he suffered an adverse action; and (4) the protected activity was a contributing factor in the adverse action. *Johnson v. U.S. Dep't of Labor,* 814 Fed.Appx. 490, 494 (11th Cir. May 18, 2020).

SOX does not provide a basis for this Court to exercise federal question jurisdiction for several reasons, primarily because the whistleblower statute applies only to publicly traded companies and Plaintiff has not alleged (and cannot allege) that Virginia Wrecking Company, Inc. and Schambeau's Rental Co., Inc. are publicly traded companies. Indeed, the Defendants are correct that the settlement in the underlying state court litigation resulted in the private sale of nearly all stock from one existing shareholder to another in the state of Alabama, which was not subject to the Securities Exchange Act of 1934 (or the Federal Securities Act of 1933). *See King, supra,* 673 F.2d at 346. Moreover, even if SOX was applicable, Plaintiff cannot rely on this statute to bring suit because he has not established that he filed a written complaint with OSHA in order to allow OSHA to resolve his claims administratively before filing suit in this Court. In addition, Plaintiff makes no

---

[16]     "To engage in 'protected activity,' an employee must provide information regarding any conduct he reasonably believes to be one or more of six enumerated types of misconduct: mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. ¶ 1344), securities fraud (18 U.S.C. § 1348), a violation of any rule or regulation of the Securities and Exchange Commission ("SEC"), or any provision of federal law relating to fraud against shareholders. 18 U.S.C. § 1514A(a)(1). Further, the information must be provided to, or the investigation conducted by, (1) a federal regulatory or law enforcement agency, (2) any member or committee of Congress, or (3) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct). 18 U.S.C. § 1514A(a)(1). It is also protected activity 'to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to' an alleged violation. 18 U.S.C. § 1514A(a)(2)." *Sturdivant, supra,* at *4.

allegation (nor can he[17]) that he was discharged, that he engaged in protected activity, or that the protected activity was a contributing factor in any adverse employment action.[18]

For all of these reasons, therefore, jurisdiction does not exist under 28 U.S.C. § 1331. And because this Court cannot exercise federal question jurisdiction, it has no basis to exercise supplemental jurisdiction over any state-law claims Schambeau has arguably asserted in accordance with 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). *See Kinsey v. King,* 257 Fed.Appx. 136, 138 (11th Cir. Sept. 24, 2007) ("Because supplemental jurisdiction alone does not permit a federal court to exercise jurisdiction, we first consider whether the district court had original jurisdiction over any of the [Plaintiffs'] claims.").

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that the pending motions to dismiss (*see* Docs. 26, 30, 31 & 32) be **GRANTED** to the extent each relies on Rule 12(b)(1) and that Plaintiff's complaint (that is, all of his purported claims as to all

---

[17]    In particular, the course of Plaintiff's own state lawsuit establishes that his disassociation from Virginia Wrecking and Schambeau's Rental came about as a result of a negotiated settlement of all of his claims asserted against his brother and the two corporations (which he initially sought to liquidate before settling his claims) and the facts underlying that lawsuit and settlement fail to reveal that at any time Joel Schambeau provided information to any of those persons/entities outlined in § 1514A(a)(1) about any one or more of the six types of misconduct identified in Section 806 of SOX.

[18]    Again, Plaintiff's omnibus response in opposition offers no assistance because it merely sets forth the provisions of the statute (*see* Doc. 38, PageID. 319-323); no jurisdictional analysis is contained in the pleading (*see id.*).

Defendants) be **DISMISSED** for lack of subject-matter jurisdiction. Because a dismissal for lack of subject matter jurisdiction "is not a judgment on the merits[,]" it should be "entered without prejudice." *Stalley ex rel. U.S. v. Orlando Regional Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate

Judge is not specific.

      **DONE** this the 21st day of January, 2021.

                        s/P. Bradley Murray
                        **UNITED STATES MAGISTRATE JUDGE**